1

Robin Ashton
Box 1168

2

Marion, MT 59925
(406) 755-0783

3

Plaintiff pro se

**RECEIVED**

JUN 1 2 2015

CLERK, U.S. DISTRICT COURT
DISTRICT OF MONTANA
MISSOULA

4

5

IN THE UNITED STATES DISTRICT COURT

6

FOR THE DISTRICT OF MONTANA

7

MISSOULA DIVISION

8

9

ROBIN ASHTON, and similarly situated        )

10

individuals        Plaintiff        )        COMPLAINT FOR DECLARATORY,

11

)        MONETARY,  AND INJUNCTIVE

12

vs.        )        RELIEF,  WITH

13

)        JURY DEMAND

14

RICHARD DE JANA, HEIDI        )        Cause No.

15

ULBRICHT in her official and personal        )
capacity,  FLATHEAD COUNTY,        )

16

DOE DEFENDANTS,    Defendants        )

17

18

### I. INTRODUCTION

19

Plaintiff Ashton incorporates all the below as if fully set forth hereat.

20

Plaintiff is a multiply disabled litigant under, seeking to conclude a deliberately protracted

21

civil litigation in which  she has been denied reasonable disability accommodations.  There is a

22

history of legal abuse through the Defense; Defendant De Jana, with false assertions, harassment,

23

bullying, threats, intimidation and retaliation through filings; which is not allowed.

24

The Court; Defendant Heidi Ulbricht took on the role of ADAA administrator, caused

25

medical conditions and records to be made public, denied accommodations, and allowed Defendant

26

ASHTON                    page 1 of 21

1   De Jana to have further, and increasingly damaging input into Plaintiff's request, further damaging

2   her health, finances, case and ability to provide for herself..

3          Defendant Flathead County does not have the required designated coordinator/

4   administrator or grievance office for Plaintiff, or others similarly situated to file with.

5

## II. JURISDICTION

6

7          Plaintiff Ashton incorporates all the above as if fully set forth hereat.

8          Jurisdiction is asserted under 28 USC 1331 because it raises a civil rights claim against a

state or local government employee or entity under 42 USC 1983. The Declaratory Judgment Act, 28

U.S.C. 2201 and 2202.

11

## III. EXHAUSTION OF REMEDIES

12

13          Plaintiff Ashton incorporates the above as if fully set forth hereat.

          All known remedies have been exhausted including DOJ, Disibility Rights Montana,

14

and more.   Funding is not available.

15

16

## IV.  PARTIES TO CURRENT LAWSUIT

17

18          Plaintiff Ashton incorporates all the above as if fully set forth hereat.

19   1.     Plaintiff is Robin Ashton a citizen of Flathead County Montana; Box 1168, Marion, MT

20   59925

21   2.     Similarly situated plaintiffs also residing in Flathead County, MT.

22   1.      Defendant is Richard De Jana; Box 1757, 120 4th St. W. suite 6, Kalispell, MT

23   59903-1757

24   2.      Defendant is Heidi Ulbricht acting as  ADA administrator and coordinator; Flathead County

25   Justice Center, 920 S. Main St. suite 310, Kalispell, MT 59901

26   ASHTON                         page 2 of 21

1   3.      Defendant is Flathead County; Flathead County Att'y Office Tim Fox, 920 S. Main, 2nd

2   floor, Kalispell, MT 59901

3   4.      Doe Defendants of Flathead County

4

5                          **V.  BACKGROUND FACTS**

6   1.      Plaintiff Ashton incorporates the above as if fully set forth hereat.

7   2.      Case starting May of 2012: As of at least Aug. 14, 2013, it was made known to the Court;

8   Defendants Heidi Ulbricht and Richard De Jana in hearing for case no. DV-13-509 (C) that the

9   Plaintiff has multiple invisible disabilities.

10  3.      Plaintiff was excused multiple times from what was to be about a 3 hour hearing that

11  turned into 8 plus; w/o her knowledge she had a right to be present while witnesses were presented

12  and had no knowledge were coming.  1st excusal was approximately 1 1/2 hr. into hearing.  Plaintiff

13  was having inability to think clearly, and additionally was in a great deal of pain as well by the 2nd

14  half of the day, which she let her attorney know.  It took 6 months for Plaintiff to fully recover from

15  the effects of that one 8 hr. day.

16  4.      Defendants Ulbricht and DeJana have seen that every time Plaintiff has been in a hearing,

17  Plaintiff has problems in under an hour and a half.

18  5.      Defendant Ulbricht at no time did anything to ensure disability accommodations would be

19  arranged for Plaintiff; which is not allowed.

20  6.      May 29, 2014 Plaintiff properly requested by letter accompanied with medical note  as

21  instructed by ACLU, for reasonable accommodations for trial upcoming in Aug. 2014, to Defendant

22  Ulbricht.  There was no response.  It was not fully addressed until 6 months later.

23  7.      June 25, 2014 at pretrial hearing Defendant Ulbricht now acting as ADA administrator,

24  stated no medical note was attached to request, besides these were not sufficient.

25  ASHTON                          page 3 of 21

26

1    Defendant De Jana was then deliberately, fully, openly, brought into this process, which is not

2    allowed.  Plaintiff asked Court to just let her know what they required and she would provide it.

3    There was never any response.

4    8.      Oct. 29, 2014 at 2nd pretrial meeting Defendant Ulbricht told Plaintiff she must file a

5    motion for a hearing on accomodation request, which is not allowed.

6    9.      Nov. 17, 2014 accommodation hearing was held, and for the third time evidence and

7    witnesses were not looked at, considered or heard.  Defendant Ulbricht took a 10 min. break to read

8    the unallowed memorandum by Defendant De Jana.  Simple accommodations were denied as

9    "inconvenient to the court", which is not allowed.

10    10.      The <u>trial date had already been rescheduled a few days prior to this hearing</u> to start Dec. 5,

11    2014, with no accommodation, it was clear there was no intention of giving accommodations.

12    Defendant Ulbricht said Plaintiff could have a half hour break twice during the 8 hour day; this is

13    not an accommodation for the Plaintiff.  Plaintiff then had a panic attack in victim witness

14    advocate's office just after this hearing, and filed initial complaint with DOJ.

15    11.      Nov. 18, 2014 Plaintiff filed a request for Defendant Ulbricht to amend the decision.

16    12.      Nov. 20, 2014 Defendant DeJana filed another response degrading and abusing Plaintiff

17    concerning health and accommodations. This is not allowed.

18    13.      Nov. 21, 2014 a 3rd pretrial hearing was held.  Trial was yet again delayed for other

19    reasons.

20    14.      Dec. 22, 2014, Defendant Ulbricht denied amending the decision.

21    15.      Throughout the case, Defendant De Jana continually has input, attempts to diagnose and

22    wrongly so, maligns, mocks and attacks the Plaintiff's health, intelligence, abilities, abuses medical

23    records of the Plaintiff, has caused her additional disability, requiring need for medical care; which

24    is not allowed.  The number of retaliation counts are far too cumbersome to list here.

25    16.      About this time Plaintiff was referred to a Certified Forensic Disability Specialist

26    ASHTON                page 4 of 21

1    Advocate (CFDSA) to help Plaintiff better understand her rights, and ability to better file causes

2    with DOJ.

3    17.    Plaintiff then learned that the Defendant Flathead County is required to have a designated

4    ADA administrator in their building, and even later on a grievance office for same.  It does not, and

5    this is not allowed.  It thus is in violation to every litigant requesting accommodations.

6    18.    Plaintiff made Defendants De Jana and Ulbricht aware there were violations of ADA

7    law.  Nothing was done.  Plaintiff after hearing back from DOJ brought violations to their attention

8    again, and sent notice of intent to file suit, including to Flathead County.   No attempt to correct any

9    deficiencies have been made.

10   19.    Each time the Plaintiff brings before the Court the deteriorating and ill effects Defendant

11   De Jana's behavior is having on her, it is deliberately, maliciously, ramped up by him, and in

12   fact made her suicidal for months, then adds this on top of it.  He continues on with such filings,

13   and on her disabilities.   This has resulted in visit to E.R.

14   20.    The original accommodations Plaintiff requested were the very least amount she thought

15   she might be able to get through trial with, and are no longer sufficient due to the additional

16   disablility of  psychiatric injury (not mental illness) acquired from legal abuse.

17   21.    The Plaintiff has been denied civil rights, due process, equal access to the justice system

18   in violation of multiple federal laws, caused unnecessary legal expense, medical expense, personal

19   injury, and damage to her physical/personal integrity.

20   22.    The negligent, and much intentional, infliction of emotional distress, has resulted in

21   Plaintiff's addiction to otherwise unnecessary Rx which also causes physical damage, and need for

22   long term ongoing medical care and detox. after all the legal business is finally finished.

23   23.    At Jan. 9, 2015 pretrial hearing, Plaintiff asked if it could be put in the jury summons

24   that people not wear fragranced products, as being in a closed up room with that many people might

25   cause problems due to asthma and chemical sensitivities.   Defendant De Jana stated he was

26   ASHTON                          page 5 of 21

1    chemically sensitive and never had a problem, like it would necessarily apply to Plaintiff.

2    Defendant Ulbricht did not make a decision, but said it would be considered.  As of this date

3    it has been answered either way.

4    24.        The United States of America has already acted as Amicus Curiae in the right to

5    sue, and loss of judicial immunity previously;  *Badillo-Santiago v. Andreu-Garcia*, Civil No.

6    98-1993 (Sec).

7    25.        It is now impossible for the Plaintiff to complete her original case with even the

8    minimal accommodations initially requested.  More must be supplied in order to be able to

9    cognitively function in a court setting.

10

11                        **VI. STATEMENT OF CLAIMS**

12          Plaintiff Ashton incorporates all the above as if fully set forth hereat.

13

14               **COUNT I. REQUEST FOR RELIEF UNDER THE**

15               **UNIFORM DECLARATORY JUDGMENTS ACT**

16          Plaintiff Ashton incorporates all the above as if fully set forth hereat.

17          The parties are unable to agree as to the legal rights of the disabled Plaintiff,

18    and require the assistance of the Court to see ADAA law fully enforced for the Plaintiff and all

19    similarly situated.

20          Even should the Defendant De Jana's malicious, false assertions that the Plaintiff is just

21    pretending ill health be real;  Plaintiff has still experienced first hand the violations of the ADA

22    laws in this case by Defendants,  experienced all the ill effects from same, including injury, that

23    would then require it.  The problem is there, exists, and needs to be remedied to be in compliance

24    with federal law for the benefit of all.  They have been on the books for years, and it is inexcusable

25    that the Justice system of Defendant Flathead County is so far out of compliance.  It does dishonor

26    ASHTON                        page 6 of 21

1   to the Justice and legal profession, and harm to litigants.

2         Plaintiff requests the Court determine the ADAA laws must be complied with, and

3   reparations made to the Plaintiff.

4

5   **COUNT II. VIOLATION OF DESIGNATED**

6   **ADAA ADMINISTRATOR**

7         Plaintiff Ashton incorporates all the above as if fully set forth hereat.

8         Each building with over 50 people in it is to designate a single, responsible employee for

9   reviewing and making detrminations as to fulfillment of reasonable accommodations.  Person

10  does not exist.  (ADA Title II-8.5000, 28 C.F.R. 35.107)  Defendant Flathead County is

11  in violation.

12

13  **COUNT III. VIOLATION OF ADAA GRIEVANCE PROCEDURE**

14        Plaintiff Ashton incorporates all the above as if fully set forth hereat.

15  Each building requiring an ADA administrator must have a grievance procedure.  It does not

16  exist. (ADA Title II-8.5000, 28 C.F.R. 35.107)  Defendant Flathead County is in violation.

17

18  **COUNT IV. COURT DID NOT REFER PLAINTIFF'S CASE**

19  **FOR ADA ADMINISTRATIVE OVERSIGHT**

20        Plaintiff Ashton incorporates all the above as if fully set forth hereat.

21        Defendant Ulbricht was made aware of Plaintiff's disabilities and did not take appropriate

22  actions to ensure accommodatons or protections were made via administrator, or acting as

23  administrator.

24        As demonstrated in the ruling in *Badillo-Santiago v. Andreu-Garcia*, 70 F Supp. 2d at 89:

25  If a judge makes a ruling regarding a litigant's ADA accommodations they do such as an

    ASHTON                page 7 of 21

26

1   administrator and not a judge.  Thereby an administrative function does not give judicial immunity

2   under the 11th Amendment.  This means that all further determinations in the case are subject to

3   appeal by either party on the grounds of bias.

4          The ruling in *Boston Hous. Auth. v Bridgewaters*, 452 Mass. 833, 845-848, 898 N.E. 2d

5   848 (2009) provides that, when an individual with a disability has notified an entity of his/her

6   disability, this "amount[s] to a request for an accommodation"; "[t]o make a reasonable

    accommodation request, no 'magic' words are required."

7

8          *Olmstead v L.C.,* 527 U.S. 581, 606 n. 16 (1999) found that Title II may be enforced

9   through private suits against public entities.  In both 42 U.S.C. 12133 and 12202, Congress

    expressly abrogated the States' Eleventh Amendment immunity to private suits in federal court.

10  This means that an assigned Trier of Fact who makes a determination regarding reasonable

11  accommodations under ADA(AA) can be sued by either party in an action where this access to

    confidential, protected information about the disabled litigant creates bias, even if illusory.

12         The Supreme Court in *University of Alabama v Garrett*, 531 U.S. 356 (2001) reaffirmed

13  this power of Congress to abrogate this immunity.

14

15  <u>**COUNT V.   APPROPRIATE ACCOMMODATIONS LETTER**</u>

16  <u>**WAS REFUSED**</u>

17      Plaintiff Ashton incorporates all the above as if fully set forth hereat.

18      Plaintiff's properly submitted request letter was ignored, then refused to be considered.

19      *Biscaro v. Stern* (2010) 181 Cal.App.4th 702 specifically found that the court *must* take

20  action on and/or respond to a request for reasonable accommodations; failing to respond to a

    request may result in reversal on appeal. 28 C.F.R.  35.160(b)(2) (2009):  under the ADAAA, "[i]n

21  determining what type of auxiliary aid and service is necessary, <u>a public entity shall give primary</u>

22  <u>consideration to the requests of the individual with disabilities.</u>"

23         The ruling in *Boston Hous. Auth. v Bridgewaters*, 452 Mass. 833, 845-848, 898 N.E. 2d 848

24  (2009) provides that, <u>when an individual with a disability has notified an entity of his/her disability,</u>

    <u>this "amount[s] to a request for an accommodation"; "[t]o make a reasonable accommodation</u>

25  ASHTON                                   page 8 of 21

26

1  request, no 'magic' words are required."

2       In accordance with 42 USC 12101 et seq, it is required that the court respond with a letter

3  of approval or denial within a "reasonable" abount of time.  This did not happen.

4

5       **COUNT VI. PLAINTIFF WAS REQUIRED TO MAKE MOTIONS**

6            **FOR HEARING FOR ACCOMMODATIONS**

7       Plaintiff Ashton incorporates all the above as if fully set forth hereat.

8  Motions and hearing were made with deleterious argument and input from opposing

9  counsel, causing further injury to the Plaintiff.

10      Requiring plaintiffs to prove that they have disabilities would defeat the privacy

11 protections set forth in the ADA; *Cossette v. Minn. Power & Light,* 188 F.3d 964, 969 (8th Cir.

12 1999)

13      See Count IV.: *Olmstead v L.C.,* 527 U.S. 581, 606 n. 16 (1999).

14      The Supreme Court in *University of Alabama v Garrett*, 531 U.S. 356 (2001) reaffirmed

15 this power of Congress to abrogate this immunity.  Requiring an individual with a disability to file

16 motions and make arguments to the Trier of Fact regarding reasonable accommodations is not only

17 outside the prescribed scope of the ADA(AA) process, it is unduly burdensome and costly to the

    litigant and immediately negates the Trier of Fact's immunity as described in Count IV *Badillo-*

18 *Santiago v. Andreu-Garcia.*

19

20           **COUNT VII. VIOLATION OF GRANTING REASONABLE**

21                **ACCOMMODATIONS**

22      Plaintiff Ashton incorporates all the above as if fully set forth hereat.

    Reasonable accommodations for disability may not be denied, and denies the person due process,

23 equal access and civil rights.  The Court does not get to qualify the litigants disability:

24 Requiring plaintiffs to prove that they have disabilities would defeat the privacy protections set

25 ASHTON                    page 9 of 21

26

1   forth in the ADA; *Cossette v. Minn. Power & Light,* 188 F.3d 964, 969 (8th Cir. 1999).

2          Further, such an objection and ruling can be construed as retaliation against a person with

3   a disability as defined by 42 USC 12203.  Olmstead v L.C., 527 U.S. 581, 606 n. 16 (1999).  See

4   count IV.

5          "With the ADA Amendments Act of 2008, Congress rejected the heightened standard for

6   demonstrating disability that the Supreme Court articulated in a series of decisions and emphasized
    that it intended the protections of the ADA to be applied broadly. Revised Title I regulations state

7   that "the primary purpose" of the ADA amendments "is to make it easier for people with

8   disabilities to obtain protection under the ADA."ix Taken as a whole, the changes to the statute and

9   regulations for Titles I, II, and III clarify (a) who has a disability entitled to protection under the
    ADA and Section 504, (b) who is entitled to accommodations, and (c) how those determinations

10  are made and by whom. No legislation or regulations require that documentation be requested or

11  obtained in order to demonstrate entitlement to legal protections because of disability and seek
    reasonable accommodations.  The regulations acknowledge that postsecondary institutions may

12  request a reasonable level of documentation. However, requiring extensive medical and scientific

13  evidence perpetuates a deviance model of disability, undervalues the individual's history and

14  experience with disability and is inappropriate and burdensome under the revised statute and
    regulations." The Association on Higher Education And Disability Supporting Accommodation

15  Requests: Guidance on Documentation Practices, April 2012.

16

17         The ADA has a three part definition of disability.  Under ADA, and individual with a

18  disability is a person who: (1) has a physical or mental impairment that materially limits one or

19  more major life activities; OR (2) has a record of such an impairment; OR (3) is regarded as having

20  such an impairment.   Plaintiff easily meets the requirements, and has long term record and

21  regarded as.

22         A person with trauma related invisible disabilities will be denied equal access to the Court

23  and grossly exploited if misinformation is allowed to attack an already overloaded psyche.  See
    *Popovich v. Cuyahoga County Court of Common Pleas*, 527 U.S. 727, 640 (1999).

24
    Litigants with trauma induced invisible disabilites react the same to helplessness in the face of

25  ASHTON                          page 10 of 21

26

1    jeopardy, regardless of the genesis of their injury.  Denying such reasonable accommodations,

2    which are intended only to "level the playing field" and ensure equal participatory and testimonial

3    access under the 14th Amendment, is tantamount to allowing the playing of sounds of gunfire while

4    a survivor of war is in court.

5            As found in *In Re Marriage of James*, 158 Cal. App. 4th, 1261, only three reasons exist

6    why an ADA request for reasonable accommodations can be denied:  a) "[t]he applicant has failed
     to satisfy the requirements of the Court [CA Rules of Court, rule 1.100]; b) "[t]he requested

7     accommodation would create an undue financial or administrative burden on the court; and/or c)

8    "[t]he requested accommodation would fundamentally alter the nature of the service, program or

9    activity."

10           The Plaintiff's requests did not violate any of these.

11           The Defendant's may not now claim the additional expense they have now created the

12   necessity for, <u>to ensure equal access for the Plaintiff</u> is an undue burden.  It did not, and would not

13   exist if not for their actions.  When law firms outside the county laugh when they hear where this

14   complaint originates from, it is a serious problem.

15

16           **COUNT VIII. OPPOSING PART WAS ALLOWED INPUT TO**

17                      **ACCOMMODATIONS REQUEST**

18           Plaintiff Ashton incorporates all the above as if fully set forth hereat.

19           Defendant De Jana did this through motions, memorandums, and hearings.

20           Requiring plaintiffs to prove that they have disabilities would defeat the privacy protections

21   set forth in the ADA; *Cossette v. Minn. Power & Light*, 188 F.3d 964, 969 (8th Cir. 1999)

22           In any application for reasonable accommodations, <u>opposing counsel is enjoined from</u>

23   <u>commentary or objection to any portion of an application as this fundamental right to equal access</u>

24   <u>is guaranteed by the Fourteenth Amendment.</u>

25   ASHTON                              page 11 of 21

26

1    See Count IV: *Olmstead v L.C.*, 527 U.S. 581, 606 n. 16 (1999) <u>where this access to</u>

2    <u>confidential, protected information about the disabled litigant creates bias, even if illusory.</u>

3

4    Neither the judge nor opposing counsel, by law, is supposed to have access to the

5    information regarding the reasons for the accommodations. This is covered by both ADA and

6    HIPAA. The application is processed by a designated ADA Coordinator who then informs the

7    bench of the accommodations and either the ADA Coordinator or the bench advises opposing

8    counsel. Despite the fact that some states ignore this by claiming that the judge or opposing party is

9    "part of" the accommodaton process, their misinformation is superceded by Federal law. In fact,

10   the law does not require that a litigant file for accommodations to be protected. If a judge and/or

11   opposing party is already aware of such a disability and chooses to use that disability to damage the

12   ligtigant, doing so is a violaton of this law and all related judgments could be appealed on the basis

13   of bias.

14

15   ### COUNT IX. PLAINTIFF HAD MEDICAL RECORDS MISUSED

16   ### AND MADE PART OF PUBLIC RECORD

17   Plaintiff Ashton incorporates all the above as if fully set forth hereat.

18   "With the ADA Amendments Act of 2008, Congress rejected the heightened standard for

19   demonstrating disability that the Supreme Court articulated in a series of decisions and

20   emphasized that it intended the protections of the ADA to be applied broadly. Revised Title I

21   regulations state that "the primary purpose" of the ADA amendments "is to make it easier for

22   people with disabilities to obtain protection under the ADA."ix Taken as a whole, the changes to

23   the statute and regulations for Titles I, II, and III clarify (a) who has a disability entitled to

24   protection under the ADA and Section 504, (b) who is entitled to accommodations, and (c) how

25   those determinations are made and by whom. <u>No legislation or regulations require that</u>

26   <u>documentation be requested or obtained in order to demonstrate entitlement to legal protections</u>
     <u>because of disability and seek reasonable accommodations.</u>  The regulations acknowledge that
     postsecondary institutions may request a reasonable level of documentation. <u>However, requiring</u>

extensive medical and scientific evidence perpetuates a deviance model of disability, undervalues the individual's history and experience with disability and is inappropriate and burdensome under the revised statute and regulations." The Association on Higher Education And Disability Supporting Accommodation Requests: Guidance on Documentation Practices, April 2012.

Self report is sufficient. The Plaintiff provided more than enough documentation. Defendant's Ulbricht and De Jana refused this. Defendant De Jana went far past this trying to refute conditions even exist, and the scientific evidence in areas he knows nothing about. This is malicious behavior on his part. He had no right to accept, refute, gain, or use any of it.

Medical records of Plaintiff have been gained, given, recorded and used illigitimity though legal proceedings.

See Count IV. *Olmstead v L.C.*, 527 U.S. 581, 606 n. 16 (1999) and *University of Alabama v Garrett*, 531 U.S. 356 (2001).

## COUNT X.  RETALIATORY ACTS

Plaintiff Ashton incorporates all the above as if fully set forth hereat.

Once a court has been made aware of such a disability, it is illegal under 42 USC 12203 to use any portion of that disability for leverage, threats, retribution or any form of bias.

Defendant De Jana, ongoing, and adding further disability to Plaintiff. (ADA II-3.11000) Too cumbersome to list all here.  See Count VIII.

Defendant De Jana has effectively removed my ability to provide for mysefl financially and medically, and was also aware of my limited financial situation.  He has not only unilaterally violated Federal disbability law, he has done so knowingly, deliberately and with apparent malice and intent to deny Plaintiff due process, equal access, ability to complete case, caused Plaintiff to become indigent, and needing to seek assistance with foodstamps, with the aid of Defendant Ulbricht, seeing all the paperwork, and taken no steps to put a stop to it, though acknowledging Defendant De Jana was making unnecessary paperwork and costs.

ASHTON                              page 13 of 21

1    Through his ongoing actions of harassment, intimidation, threats and IIED, has added

2    psychiatric injury, adding to the list of disabilities and needs for accomodation required.  He has

3    decades of experience, so Plaintiff expects he knows exactly what he is doing.  Defendant Ulbricht,

4    seeing the the paperwork that has gone through the Court, and in hearings, has taken no steps to put

5    a stop to this.  Also see count VII.

6

7                    **COUNT XI.  DENIAL OF DUE PROCESS**

8    Plaintiff Ashton incorporates all the above as if fully set forth hereat.

9    To the extent that Title II enforces the Fourteenth Amendment, the Court in *Popovich v*

10   *Cuyahoga County Court of Common Pleas*, 527 U.S. 727, 640 (1999) found that, "The fact that

11   Title II implicates constitutional violations in areas ranging from education to voting also suggests

12   that heightened judicial scrutiny under both the <u>Due Process</u> and Equal Protection Clauses is

13   appropriate."

14   Plaintiff has also been denied due process in her case in other venues, such as being

15   allowed to make amended complaint, seeing discovery completed, ability to locate and call

16   witnesses, and be present to hear witness testimony.

17

18                    **COUNT XII. VIOLATION OF EQUAL ACCESS**

19   Plaintiff Ashton incorporates all the above as if fully set forth hereat.

20   As found in *In Re: Ruby McDonough*, 457 Mass. 512 (2010), all courts are required by the

21   Americans with Disabilities Act Amendments Act of 2009 to facilitate equal participatory and

22   testimonial access to individuals with disabilities.  Failure to grant requested participatory and

23   testimonial accommodations will bar <u>equal access</u> to the Court.

24   Federal law mandates that anyone with anyone with a qualifying disability, whether visible

25   ASHTON                          page 14 of 21

26

or not, be granted "reasonable accommodations" to participate in court processes when the litigant's ability to participate fully is compromised by becoming symptomatic. The landmark case of Tennesee v Lane found that this not a question of due process but rather equal access to the court. Plaintiff has been denied.


### COUNT XIII. VIOLATION OF EQUAL PROTECTION

Plaintiff Ashton incorporates all the above as if fully set forth hereat.

See Count XI.  *Popovich v Cuyahoga County Court of Common Pleas*, 527 U.S. 727, 640 (1999) Equal Protection.   Also Count VII.


### COUNT XIV. VIOLATION OF CIVIL RIGHTS

Plaintiff Ashton incorporates all the above as if fully set forth hereat.

At the least; 14th amendment sec.1  rights have been violated, as well as Montana Constitution Article II sec. 4.  and see Count VII. *Popovich v Cuyahoga County Court of Common Pleas*, 527 U.S. 727, 640 (1999).  Plaintiff is not getting equal protection, or individual dignity.   Also see Count VII.


### COUNT XV.   NEGLIGENCE

Plaintiff Ashton incorporates all the above as if fully set forth hereat.

The Defendant's have been negligent in carrying out duties for the jobs they function in, behaving in a manner conducive to the wellbeing of the Plaintiff, the case, the legal system and society as a whole.


ASHTON                          page 15 of 21

### COUNT XVI.   MALICE

Plaintiff Ashton incorporates all the above as if fully set forth hereat.

Defendant De Jana has acted in malice in the violations in this case, as stated in

other counts.

### COUNT XVII.  PERSONAL INJURY

Plaintiff Ashton incorporates all the above as if fully set forth hereat.

Plaintiff has suffered personal injury to her physical, emotional and financial health

due to Defendant De Jana's deliberate behavior in this case, requiring medical care,

and addictive, brain damaging medication.  Having to file for this, that should never have come

into being, is just adding to it.

### COUNT XVIII.  BREACH OF GOOD FAITH

Plaintiff Ashton incorporates all the above as if fully set forth hereat.

The Defendant's have not acted in the good faith and reasonable expectation expected by

the public or the Plaintiff, in providing civilized, peaceful, honest, reasonable, equitable access to

the justice system.  They have degraded what should be an honorable, and able to be looked-up-to

institution in our country.

### COUNT XIX.   NIED

Plaintiff Ashton incorporates all the above as if fully set forth hereat.

Defendant Flathead County aided in the negligent emotional distress of Plaintiff, by not having

the appropriate services in place, and not being up to date on laws on the books.

Defendant Ulbricht aided, by not properly handling disability request, ignoring

that the Plaintiff was already known to have disability, undergoing severe disstress,  allowing

continued abuse by Defendant De Jana, and not being up to date on laws on the books.

Defendant De Jana contributed by not being up to date on laws on the books.

ASHTON                          page 16 of 21

### COUNT XX.  IIED

Plaintiff Ashton incorporates all the above as if fully set forth hereat.

This applies to Defendant De Jana and Defendant Ulbricht.

Defendant Ulbricht aided intentional emotional distress, after it being repeatedly pointed out of the ongoing abuse by Defendant De Jana, ignoring it, for months.

Defendant De Jana has commited hundreds of counts of IIED throughout the case, which are too cumbersome to put in this complaint, and are public record.  Defendant De Jana was aware well before 2013 hearing that Plaintiff was a soft spoken person, via her attorney.  He was further warned by settlement master not to be harsh to me.  These seem to have been taken as an indicator to be even more aggressive in his bulllying/stalking, harassing, threatening, intimidating behavior.  They are believed by the Plaintiff to be a direct, deliberate attempt at destroying the Plaintiff's life sufficiently to disable her from being able to complete her case.  As previously mentioned, it is to the extent that even when informed of the ill effects not only on her finances, and health, they were upped, and then when she made known she had been made suicidal by them, they were not stopped, and instead continues to mock the Plaintiff.  He then further argues that the laws do not apply to the Plaintiff.

Plaintiff is certain Defendant De Jana is aware of the rule she recently learned of, "the eggshell skull", that you must take the Plaintiff as they are.   He knows, and he does it anyway.  That is malice, harassment, violations of the Plaintiff's rights, and has caused her serious damage.

### COUNT XXI.  PETITION FOR TEMPORARY RESTRAINING
### ORDER AND INJUNCTION ORDERS TO COMPEL

Plaintiff Ashton incorporates all the above as if fully set forth hereat.

Defendant De Jana and Ulbricht's activities have caused the Plaintiff to be unable to be fully functional in and to the completion of her case.  The continuance of these activities will cause

1    further harm to the parties in their original case, and additional personal and financial injury to

2    the Plaintiff.

3              The Plaintiff and for the wellbeing of all citizens in the county, need to have the

4    the laws upheld.  Without same, the Plaintiff cannot expect any real just outcome to her original

5    case.

6              Petition for enclosed Temporary Restraining Order accompanying this Complaint

7    upon Defendant De Jana from having further say concerning disability, health, or using medical

8    records related to ADA of Plaintiff in any manner, written or spoken, and to refrain from

9    ongoing retaliatory actions, such as threats, harassment, name calling, insults, threats of arrest,

10   additional unnecessary paperwork and arguments, or any other wording the Court sees necessary

11   throughout the completion of original case DV-13-509 (C), with provision for renewal should it

12   become necessary.

13             Order for injunction to compel provision for all reasonable accommodations now

14   necessary to Plaintiff, with all costs for needed auxilliary aid of medical CFDSA, divided and paid

15   for by Defendants, as Plaintiff having been made indigent through this process is unable to afford

16   same, and even if affordable, should not be required to pay for damages created by Defendants.

17   This includes said expenses throughout the remainder of all hearings and litigation from original

18   case, and all those created by and originating from it to their final conclusion.

19             Being the County is in noncompliance, and therefore previous, and until compliant, future,

20   ADA rights of others have been and will be violated, Defendant Flathead County should open and

21   start funding an account for those who can come out of the woodwork.

22

23             **WHEREFORE,**  Plaintiff Ashton prays for the following relief:

24   1.         A declaratory judgment determining the ADA laws must be enforced.

25   ASHTON                        page 18 of 21

26

1

2    2.   A declaratory judgment Defendant Flathead County must a.s.a.p. train a designated ADA

3        administrator/coordinator, and an office that can also be used to file grievances for same.

4    3.   A declaratory judgment that the Plaintiff must be allowed to make and receive reasonable

5        accommodations, including the additional ones now required, so we may complete our case,

6        without yet further delays.

7    4.   For the Court to issue the proposed Order accompanying this Complaint, compelling

8        Defendant's to jointly among themselves share in paying for the services of the now required,

9        qualified medical CFDSA in order to monitor the Plaintiff's functional condition and rights for

10       all  remaining hearings and trial in original case, and all cases caused to be derived from that.

11       Fee schedule is sent to this Court's ADA administrative office & can coordinate payments.

12    5.   For the Court to issue the proposed Temporary Restraining Order accompanying this Complaint

13       upon Defendant De Jana from having further say concerning disability, health, or using medical

14       records related to ADAA of Plaintiff in any manner, written or spoken, and to refrain from

15       ongoing retaliatory actions, such as threats, harassment, additional unnecessary paperwork and

16       arguments.

17    6.   For the Court to issue the proposed Order accompanying this complaint compelling Defendant

18       Flathead County to open an account for other litigants having been denied accommodations in

19       said county.

20    7.   For the judgment of the federally appropriate fines for violations of ADA laws upon each

21       Defendant, currently being $75,000 for first offense, and $150,000 per each additional offense,

22       violations occurring on or after April 28, 2014.  $55,000 and $110,000 prior to that date.

23    8.   For punitive damages.

24    9.   For compensatory damages.

25    ASHTON                page 19 of 21

26

1

2     <u>10</u>. For all additional damages and costs.

3     <u>11</u>. For such other and further relief as the Court deems just and proper.

4     <u>12</u>. And /or (numbers 7-10) total judgment of $4.5 million to the Plaintiff.

5         Plaintiff reserves the right to make amended complaint.

6     ~~ASHTON~~                    ~~page 19 of 21~~

7         DATED this _10th_ day of _June_ 2015.

8

9                              _Robin Ashton_

10                            Robin Ashton, Plaintiff

11                    <u>VERIFICATION</u>

12    STATE OF MONTANA )
                                  ) ss.
13      County of Flathead     )

14        Robin Ashton, being first duly sworn, deposes and says that she is the Plaintiff in the above

15    matter; that she has read the foregoing and that the facts and informations contained therein are true

16    and correct to the best of her knowledge, information and belief.

17                              _Robin Ashton_

18                            Robin Ashton

19    Subscribed and sworn to before me this _10th_ day of _June_ 2015 by Robin Ashton

20

21                          _____

22    Notary Public for the State of Montana

23                              _N/A_

24    Printed Name of Notary Public

25 ASHTON                page 20 of 21

26

1

2                                   **JURY DEMAND**

3

4          Plaintiff hereby demands a trial by jury on all such issues which a jury may properly

5    consider.

6

7    By: _Robin Ashton Gene 10/2015_

8                    Robin Ashton Pro Se
                        Box 1168
9                    Marion, MT 59925
                      406-755-0783
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25 ASHTON                          page 21 of 21

26